**No. 55772.**—S. Farkash, Inc. *v.* United States, protest 135790–K (New York).

MOLLISON, Judge:   The merchandise the subject of this protest is described on the invoice as "embossed lining splits" and was assessed with duty at the rate of 20 percent ad valorem under the provisions of subparagraph (d) of

paragraph 1530 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 1530 (d)), as modified by the British Trade Agreement, T. D. 49753, for—

Leather made from hides or skins of cattle of the bovine.species, grained, printed, embossed, ornamented, or decorated, in any manner or to any extent .(including leather finished in gold, silver, aluminum, .or like effects), or by any other process (in addition to tanning) made into fancy leather, * * * all the foregoing by whatever name known, and to whatever use applied.

The protest denies that the leather involved is fancy leather, or that it is grained, printed, embossed, ornamented, or decorated, or that its classification is governed by paragraph 1530 (d), *supra*, and claims the leather to be dutiable .under the provisions of subparagraph (b) (4) of the said paragraph 1530, as modified by the said trade agreement, at either 10 or 12½ percent ad valorem, or under subparagraph (b) (7) of the said paragraph, as modified, at the rate of 10 percent ad valorem. The pertinent portions of the tariff provisions under which claim is made read as follows:

| 1530 (b)___ | Leather (except leather provided for in subparagraph (d) of paragraph 1530, Tariff Act of 1930), made from hides or skins of cattle of the bovine species: | |
|---|---|---|
| | * * * * * * * | |
| | (4) side upper leather (including grains and splits), and lining leather made from calf or kip skins, rough, partly finished, or finished, * * *: | |
| | Side upper splits, wax or rough, not cut or wholly or partly manufactured into uppers, vamps, or any forms or shapes suitable for conversion into boots, shoes, or footwear | 10% ad val. |
| | Other | 12½% ad val. |
| | * * * * * * | |
| | (7) all other, rough, partly finished, finished, or curried, not specially provided for | 10% ad val. |

There is a further claim in the protest for duty at the rate of 15 percent ad valorem under the provisions of paragraph 1530 (b) (5), as modified by the said British Trade Agreement, which, while not specifically abandoned, was not pressed, and, in view of our conclusion herein, it need not be considered here.

It was conceded by counsel for both parties that the leather in issue was made from hides of cattle of the bovine species. Since paragraph 1530 (b), as modified, excepts from its provisions "leather provided for in subparagraph (d) of paragraph 1530, Tariff Act of 1930," first inquiry will be whether the leather in issue is provided for in the said subparagraph (d) under which it was classified and assessed with duty.

There does not seem to be any question but that the merchandise in issue consists of split leather used for lining shoes. Split leather, as one witness described it—

* * * is leather that has been split from its original thickness. A layer has been taken off its original thickness.

The layer from the flesh side of the leather is known as a "split," while the leather from the hair side is known as "top grain." The evidence indicates that the "top grain" exhibits a natural grain due to the hair follicles, but that splits have no hair follicles and consequently no natural grain.

The official sample of the involved leather is before us as plaintiff's exhibit 1, and one surface thereof, while smooth to the touch, exhibits a very fine pebbly texture. The president of the plaintiff corporation, a man of some 40 years' experience in the leather business, testifying in its behalf, stated that the leather in issue is "smooth embossed plated leather" (Tr. p. 29), and had been "plated from natural grain smooth plate to give it the effect of a smooth piece of leather" (Tr. p. 30), and "would not be a good definition" for embossed, grained, decorated, or ornamented leather (Tr. pp. 31–2).

Concerning embossing, the witness testified as follows:

Q. How about embossed leather?—A. You put on several different grains, like alligator, beaver, scotch grain, crushed grain.

CHIEF JUDGE OLIVER: Is embossing a process which places a different type of surface on the leather from what originally or naturally was on it?

WITNESS: Yes, for instance if I want to put an alligator grain on cowhide, I put that on it.

JUDGE MOLLISON: You press or stamp that on?

WITNESS: Yes, by a pressing machine, an embossing machine.

Q. Does that hold true of ornamented or decorated leather?—A. Yes, it must go through that process.
Q. Fancy or decorated leathers are made by pressing on some machine?—A. Yes. You use the same process for smooth leathers, plate them smooth without any design on them.

CHIEF JUDGE OLIVER: If you press a smooth leather with a smooth plate in the embossing machine you get a smooth finish?

WITNESS: Yes. (Tr. p. 20.)

It will be noted that the witness referred to the leather in issue as "smooth embossed plated leather," but it is apparently the contention of the plaintiff that embossed leather refers only to leather having a more perceptibly raised surface than is shown in exhibit 1 and with a more pronounced form, figure, or design thereon, and that the leather in issue, although brought to the condition as represented by exhibit 1 by means of an embossing machine, nevertheless, was not embossed leather because of its somewhat smooth surface and the relatively shallow texture shown thereon.

However, as hereinbefore indicated, exhibit 1 exhibits a very fine pebbly texture which resembles the grain of leather. Concerning this, on cross-examination, the witness testified:

X Q. Do you know what was done to Exhibit #1 in evidence?—A. Yes, it is cell plate. It was cell-plated to give the appearance of grained leather, of full grain leather and then smooth plated.

X Q. What kind of cell plate was that, was it a metal plate?—A. Metal plate.

X Q. How is the operation of the cell plate as applied to Exhibit #1 done?—A. It is put into a machine and heated and dressed down.

CHIEF JUDGE OLIVER: Does a cell plate have any points on it—when it is pressed into the leather does it restore the grain?

WITNESS: Yes, that is the cell-plate. (Tr. pp. 35–6.)

The conclusion is inescapable that the texture or grain shown on exhibit 1 was put there by the cell-plating process, which is apparently a form of embossing.

Plaintiff's other witness, an officer of a leather tanning and finishing company, with 25 years' experience in the tanning and finishing of leather, identified exhibit 1 as "smooth" leather and stated it was not embossed, decorated, or fancy leather within his knowledge. He said he would not call the grain on exhibit 1 the "natural grain" but was unable to say how it was put on. Later he said it looked like top grain leather to him, although plaintiff's other witness identified it as "the lowest type of split." ·

Both of defendant's witnesses, men of considerable experience in the leather business, identified exhibit 1 as embossed or plated leather, regarding the two terms as synonymous.

The argument made in the brief filed on behalf of the plaintiff is that the texture or grain shown in exhibit 1 "does not rise to the dignity of" embossing for two reasons: (1) That it is imperceptible, and (2) it does not have a form, figure, or design, citing *Stiner & Son and Bischoff & Co.* v. *United States*, 2 Ct. Cust. Appls. 347, 349, T. D. 32079. An examination of exhibit 1 is sufficient to refute the first reason, for the grain is clearly perceptible and distinct even though the indentations and protuberances are not very pronounced. In this connection, it might be pointed out that the provision under which the merchandise was classified covers "Leather * * * embossed * * * in any manner or to any extent" so that the question of degree is not involved so long as the process employed and its result are embossing. The second reason given is refuted by the testimony of the witnesses that what appears on the surface of exhibit 1 is a leather grain effect, which is certainly a form, figure, or design, and that it was put on there by a plating or embossing process.

We are satisfied that a preponderance in weight of the evidence offered establishes that the leather in issue is embossed leather within the provision under which classification was made, and in view of the fact that such leather is, by statutory language, excluded from classification under subparagraph (b) of paragraph 1530, under which plaintiff claims, it is unnecessary to inquire into or discuss the matter further.

Judgment will therefore issue overruling the protest claims accordingly.